[Cite as *State v. Mondie*, 2019-Ohio-5337.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 108030 |
| v. | : | |
| CEDRIC MONDIE, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 26, 2019

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-621490-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Brian D. Kraft, Assistant Prosecuting Attorney, *for appellee.*

Susan J. Moran, *for appellant.*

ANITA LASTER MAYS, J.:

{¶ 1} Defendant-appellant Cedric Mondie ("Mondie") appeals his convictions and sentence, and asks this court to reverse and remand the matter for a new trial. We affirm Mondie's convictions and sentence.

{¶ 2} After a jury trial, Mondie was found guilty under an accomplice liability theory 0f two counts of aggravated murder, in violation of R.C. 2903.01(A) and 2903.01(B); one count of kidnapping, a first-degree felony, in violation of R.C. 2905.01(A)(3); one count of murder, in violation of R.C. 2903.02(B); one count of felonious assault, a second-degree felony, in violation of R.C. 2903.11(A)(1). Count 6, weapons under disability, a third-degree felony, in violation of R.C. 2923.13(A)(3), was bifurcated and tried to the bench. Mondie was also found guilty under an accomplice-liability theory on Count 6. All counts except having weapons under disability, had a one- and three-year firearm specification attached.

{¶ 3} Mondie was sentenced to an aggregate of 44 years to life imprisonment. The trial court imposed a prison sentence of 30 years to life with a three-year firearm specification on Count 1, aggravated murder; eight years with a three-year firearm specification on Count 3, kidnaping, to run consecutively to Count 1; and 36 months on Count 6, having a weapon while under a disability. Count 6 was ordered to run concurrent to Counts 1 and 3. The state conceded that Counts 2, 4, and 5 merged into Count 1. Defense counsel objected to the consecutive sentence and failure to merge the charges.

I.     Facts and Procedural History

{¶ 4} On April 14, 2013, Charles Braxton ("Braxton") asked his friend Demetrius Robinson ("Robinson") to give him a ride to a local gas station. On the way to the gas station, Braxton made a call at 8:34 pm, to a number later associated with Mondie, but no one answered. Within a minute, the caller returned the call to

Braxton. Robinson heard Braxton tell the caller that he sees him and Braxton instructed Robinson to turn around. Robinson pulled his red Jeep up to a gas pump and right on the other side of the gas pump was a white car. Braxton exited Robinson's car and entered the rear door on the passenger side of the white vehicle. Robinson observed three people in the white car, but could not clearly see their faces because he only had one contact lens in his eye. However, Robinson was able to give a complete description of the driver's clothing and size. The description matched the surveillance video of Mondie at the gas station. According to Robinson, after two minutes or so, the white car pulled away with Braxton inside. Robinson saw Braxton's face, and Braxton looked concerned. Robinson immediately tried to follow the white car that Braxton was inside. He testified that the driver observed that Robinson was trying to follow and darted into oncoming traffic to lose Robinson's tail.

{¶ 5} At 8:43 p.m., a citizen made a call to Cleveland Division of Police's dispatch unit stating that there was a man lying face down in the middle of the street. Prior to that 911 call, Jeffery Richard ("Richard") was in his bathroom when he heard someone outside say "Come on, man. Come on." Richard then heard a single gunshot and ran outside to see what happened. He observed a white car speed away from the scene. Richard also observed an unidentified young man standing over a body that was later identified as Braxton. Richard asked the young man if someone was shot. The young man replied affirmatively and Richard moved closer to Braxton

and realized that he was still breathing. Richard and another neighbor attempted to render aid.

{¶ 6} The police arrived at the scene and found a single, spent .45 caliber shell casing near Braxton's body. Braxton was rushed to the hospital where he died from complications of a gunshot wound. The death was classified by the medical examiner as a homicide.

{¶ 7} Braxton's murder went unsolved for three years. Then, in November 2016, the police received a tip regarding the identity of the driver of the white car. Using the security camera footage from the gas station, the tipster was able to identify the driver from the red star tattoo on his neck. The driver was identified as Mondie. From phone records, Mondie was also identified as the person associated with the phone number Braxton called on his way to the gas station on the day of his murder.

{¶ 8} Mondie was subsequently charged in a six-count indictment and pleaded not guilty to all counts. After a jury trial, Mondie was found guilty on Counts 1 through 5, and the trial court found Mondie guilty on Count 6. Mondie was convicted under an accomplice liability theory. Mondie was sentenced to 44 years to life imprisonment. Mondie filed this instant appeal assigning three errors for our review:

I.    Appellant's convictions are against the manifest weight of the evidence;

II.   The trial court erred by denying appellant's motion for acquittal pursuant to Crim.R. 29 when the state failed to submit

sufficient evidence of appellant's identification and failed to submit evidence that firearms were used as part of the kidnapping denying the appellant of due process; and

III. The trial court erred in imposing a maximum consecutive sentence which was not supported by the record.

## II. Manifest Weight and Sufficiency of the Evidence

### A. Standard of Review

{¶ 9} We will review the manifest weight and sufficiency of the evidence and the assignments of error together. The Ohio Supreme Court has addressed the standard of review we must apply for a criminal manifest weight challenge:

> The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. *Id.* at 386. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. *Id.* at 386-387. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? * * * *Id.* at 387. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

*State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25.

> In evaluating a criminal manifest weight challenge, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of all witnesses and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 172, 485 N.E.2d 717

(1st Dist.1983), paragraph three of the syllabus. Accordingly, reversal of a conviction on manifest weight grounds is reserved for "the exceptional case that the evidence weighs heavily against the conviction." *Id.*

In conducting this review, this court remains mindful that the weight of the evidence and the credibility of the witnesses are matters primarily for the factfinder to assess. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The rationale behind this principle is that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimonies are credible. *Id.*

*State v. Hernandez*, 2018-Ohio-738, 107 N.E.3d 182, ¶ 27-28 (8th Dist.).

## B. Whether Appellant's Convictions are Against the Manifest Weight of the Evidence

{¶ 10} Mondie contends that his convictions are against the manifest weight of the evidence because there was not competent credible evidence that he committed the offenses and the car he was seen driving was different from the car that was identified at the crime scene. More specifically, Mondie states that the vehicle identified by the witnesses had different tail lights, shape, and a missing hubcap.

{¶ 11} A review of the record reveals that Robinson and Richard described seeing a white car. Richard stated that he saw a white or silver Sea Breeze or Taurus with a rounded body and the tail light stretched across the body. It was also stated that there was no hubcap on the passenger side of the white vehicle. Robinson described a white Concord or Taurus. Mondie contends that the vehicle in the video had a square or rectangular rear window, with single tail lights on each side and no

missing hubcaps. The record reveals that both witnesses were unsure of the make and model, but described cars similar to Mondie's, which was a white Taurus. The surveillance video shows Robinson pull next to a gas pump with a white vehicle on the other side of the gas pump.

{¶ 12} The video shows Braxton exiting the red car but does not show him getting into the white car because the time stamp is blocking a portion of the video. However, Robinson clearly states that he watched Braxton enter the white car and Mondie return to the same white car and enter the driver's seat. Additionally, the tipster identified Mondie as the individual driving the white car at the gas station on the evening of Braxton's murder.

{¶ 13} Mondie then argues that even if he was the driver of the white car at the scene, he was not complicit in the murder because he drove away from the scene without the shooter. Mondie contends that this shows that he was not in agreement with the conduct of the shooter. Mondie was convicted under an accomplice-liability theory. R.C. 2923.03(A) and 2923.03(F) states,

> (A)  No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
>
> > (1)  Solicit or procure another to commit the offense;
> >
> > (2)  Aid or abet another in committing the offense;
> >
> > (3)  Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;
> >
> > (4)  Cause an innocent or irresponsible person to commit the offense.

(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.

"The complicity statute treats the accomplice as though 'he was the one who committed every act of the underlying principal offense.' *State v. Jackson*, 90 Ohio App.3d 702, 705, 630 N.E.2d 414 (6th Dist.1993); R.C. 2923.03(F)." Mondie claims, however that, if he had been an accomplice, he would have provided the shooter a means of escape in his car.

{¶ 14} The state, at trial, argued that Mondie was the principal offender of the kidnapping and an aider and abettor of the aggravated murder. Evidence was offered demonstrating that Mondie lured Braxton to the gas station for a proposed drug purchase in order to kidnap him by driving to another area where Mondie could be robbed and murdered. The state and defense counsel stipulated that the cell phone number in question was in fact Mondie's cell phone number on the day of Braxton's murder. The evidence showed that Braxton had called Mondie's cell phone at 8:34 p.m.

{¶ 15} The state's evidence also included video evidence from the gas station, Robinson and Richard's testimony, and the tipster identifying Mondie as the driver of the white vehicle that Braxton entered. Robinson testified that after Braxton informed the caller that he saw him, he exited Robinson's car and entered the white car. The driver of the white car suddenly drove off with Braxton looking back with a concerned look. In fact, Robinson stated that he had never seen Braxton look that

way. To Robinson, Braxton's face looked like he was saying "help me". Robinson described Mondie's clothing and that description matched the gas station's surveillance video. The driver of the white vehicle suddenly drove away and intentionally evaded Robinson in an effort to keep him from following him. Robinson lost sight of the white vehicle.

{¶ 16} Then, Richard testified while in his home he heard someone say "come on man, come on" and then a single gunshot. Richard stated that after hearing the gun shot, it took him between five to 10 seconds to get to his porch. While on the porch, he saw a white car near the man that was standing over Braxton's body. Richard believed that the white car was connected with the incident. Richard stated that the white car moved forward, stopped and then pulled away. Richard observed that Braxton only had on underwear and socks but, no other clothing was located at the scene. The state also relied on evidence that Braxton was shot and killed within four minutes of entering Mondie's vehicle and leaving the gas station.

{¶ 17} We have to weigh the evidence Mondie presented at trial against the state's evidence.

> Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight given to the evidence are primarily matters for the trier of fact to decide. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. Thus, an appellate

court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances where the evidence presented at trial weighs heavily against the conviction. *Thompkins* at 388.

*State v. Freeman*, 8th Dist. Cuyahoga No. 106374, 2018-Ohio-3587, ¶ 19.

{¶ 18} We find that Mondie's contentions are without merit and the evidence presented at trial does not weigh heavily against Mondie's conviction.

{¶ 19} Mondie also contends that because the gas station surveillance video incorrectly displays the time the police cars were seen after the emergency call was made, the time of the kidnapping, and shooting were insufficient to demonstrate that he was involved. The evidence presented at trial by several officers demonstrated that the time on the gas station surveillance video was incorrect and did not accurately reflect the time that evening. However, the state presented evidence of the time stamp from the police cruiser's dash camera footage, the time of the 911 calls, and the surveillance camera video showing the time that the police cruisers sped past the gas station to demonstrate the actual time. The results showed the time on the gas station surveillance camera was 4 minutes and 49 seconds faster than the actual time. We find that Mondie's argument is misplaced.

{¶ 20} We find that the state's evidence presented at trial regarding the time on the video does not weigh heavily against Mondie's conviction.

{¶ 21} Mondie's first assignment of error is overruled.

**C. Whether the Trial Court Erred by Denying Appellant's Motion for Acquittal Pursuant to Crim.R. 29 when the State failed to Submit Sufficient Evidence of Appellant's Identification and Failed to Submit Evidence that Firearms were Used as Part of the Kidnapping Denying the Appellant of Due Process**

{¶ 22} Mondie contends that the evidence was not sufficient to convict him, and that the trial court erred by denying his Crim.R. 29 motion.

> A Crim.R. 29(A) motion for acquittal tests the sufficiency of the evidence. *State v. Capp*, 8th Dist. Cuyahoga No. 102919, 2016-Ohio-295, ¶ 19. Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the state's evidence is insufficient to sustain a conviction for an offense. *Id.* Accordingly, an appellate court reviews a trial court's denial of a defendant's motion for acquittal using the same standard it applies when reviewing a sufficiency-of-the-evidence claim. *Id.*

*State v. Hoskin-Hudson*, 8th Dist. Cuyahoga No. 103615, 2016-Ohio-5410, ¶ 7.

{¶ 23} Mondie argues that the state failed to demonstrate that a gun was used in Braxton's kidnapping. Mondie claims that Robinson did not testify that he saw a gun in the car as it drove away with Braxton. Also, Mondie argues that since the murder and kidnapping were ruled to have separate animus, the gun used for the murder was not necessarily used for the kidnapping.

{¶ 24} Mondie was convicted of aggravated murder, in violation of R.C. 2903.01(A) and 2903.01(B); kidnapping, in violation of R.C. 2905.01(A)(3); murder, in violation of R.C. 2903.02(B); felonious assault, in violation of, R.C. 2903.11(A)(1); and having a weapon while under disability, in violation of R.C. 2923.13(A)(3). The statutes read as follows:

No person shall purposely, and with prior calculation and design, cause the death of another * * *.

No person shall purposely cause the death of another * * * while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, kidnapping, rape, aggravated arson, arson, aggravated robbery, robbery, * * *.

R.C. 2903.01(A) and 2903.01(B).

No person, by force, threat, or deception, or, * * *, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

To terrorize, or to inflict serious physical harm on the victim or another.

R.C. 2905.01(A)(3).

No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.

R.C. 2903.02(B).

No person shall knowingly do either of the following:

Cause serious physical harm to another * * *.

R.C. 2903.11(A)(1).

Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse * * *.

R.C. 2923.13(A)(3).

{¶ 25} The state argued that the kidnapping began at the gas station and continued until Braxton was shot on the street. The state offered circumstantial evidence that Mondie was responsible, under the accomplice-liability theory, for the aforementioned crimes.

> "Proof of guilt may be made by circumstantial evidence, real evidence, and direct evidence, or any combination of the three, and all three have equal probative value." *State v. Zadar*, 8th Dist. Cuyahoga No. 94698, 2011-Ohio-1060, ¶ 18. Direct evidence exists when "a witness testifies about a matter within the witness's personal knowledge such that the trier of fact is not required to draw an inference from the evidence to the proposition that it is offered to establish." *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13. In contrast, "circumstantial evidence requires the drawing of inferences that are reasonably permitted by the evidence." *Id. See also State v. Hartman*, 8th Dist. Cuyahoga No. 90284, 2008-Ohio-3683, ¶ 37 ("circumstantial evidence is the proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind").
>
> Circumstantial evidence and direct evidence inherently possess the same probative value. [*State v.*] *Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph one of the syllabus. "Although there are obvious differences between direct and circumstantial evidence, those differences are irrelevant to the probative value of the evidence — circumstantial evidence carries the same weight as direct evidence." *Cassano* at ¶ 13, citing *State v. Treesh*, 90 Ohio St.3d 460, 485, 739 N.E.2d 749 (2001). "Since circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." *Jenks* at 272. "'Circumstantial evidence is not only sufficient, but may also be more certain, satisfying, and persuasive than direct evidence.'" *State v. Hawthorne*, 8th Dist. Cuyahoga No. 96496, 2011-Ohio-6078, quoting *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960).

*State v. Rodano*, 2017-Ohio-1034, 86 N.E.3d 1032, ¶ 35-36 (8th Dist.).

**{¶ 26}** The evidence showed that the entire interaction between Braxton and Mondie was less than 10 minutes. Braxton's initial call to Mondie was at 8:34 p.m. The 911 call was made at 8:43 p.m. Because of the shortness of the entire incident, it can be inferred that the gun and shooter were in the vehicle when Mondie drove away from the gas station. It was also implied that the gun was used in the kidnapping of Braxton as he was driven away by Mondie. Richard testified that he heard a gunshot, and then observed a man standing near the white car. The white car moved forward, stopped then sped away. Therefore, it can be inferred that Braxton was restrained inside of the vehicle with a gun and the driver of the vehicle knew that Braxton was shot. "When performing a sufficiency inquiry, an appellate court does not assess whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction." (Citations omitted.) *Capp*, 8th Dist. Cuyahoga No. 102919, 2016-Ohio-295, ¶ 20.

**{¶ 27}** Mondie also argues that the evidence was insufficient to identify him as the driver of the white vehicle. The gas station surveillance video showed Mondie exiting the white vehicle, entering the convenience store to conduct a transaction, and exiting the store, returning to the same white vehicle. The surveillance video inside the convenience store clearly captures Mondie's image. Robinson testified that Braxton entered a white vehicle and described the driver and his clothing. Robinson stated that the driver was heavier and was wearing a name brand red jacket with white writing on it. The description given by Robinson matched the clothing Mondie was wearing in the video. Richard and Robinson described a white

Sea Breeze, Contour or Taurus, when in fact the vehicle was a white Ford Taurus. Additionally, testimony was presented that three years after Braxton's murder, a tipster identified Mondie as the individual in the gas station convenience store surveillance video. Finally, evidence presented at trial determined the correct time of the surveillance video.

**{¶ 28}** In light of the state's evidence, we find that the trial court did not err is denying Mondie's Crim.R. 29 motion on all of Mondie's arguments.

**{¶ 29}** Therefore, we overrule Mondie's second assignment of error.

### III. Maximum Consecutive Sentences

#### A. Standard of Review

**{¶ 30}** "[W]e may disturb a felony sentence only if we clearly and convincingly find that either 'the record does not support the sentencing court's findings' or 'the sentence is otherwise contrary to law.' R.C. 2953.08(G)(2); *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1, 21-23." *State v. Bush*, 8th Dist. Cuyahoga No. 106392, 2018-Ohio-4213, ¶ 22.

**{¶ 31}** Therefore,

> [a] sentence is contrary to law if the sentence falls outside the statutory range or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12. *See, e.g., State v. Pawlak*, 8th Dist. Cuyahoga No. 103444, 2016-Ohio-5926, ¶ 58; *State v. Keith*, 8th Dist. Cuyahoga Nos. 103413 and 103414, 2016-Ohio-5234, ¶ 8, citing *State v. Hinton*, 8th Dist. Cuyahoga No. 102710, 2015-Ohio-4907, ¶ 10.

*State v. Jung*, 2018-Ohio-1514, 111 N.E.3d 54, ¶ 14 (8th Dist.).

**B. Whether the Trial Court Erred in Imposing a Maximum Consecutive Sentence that was not Supported by the Record**

{¶ 32} Specifically, Mondie claims that the trial court failed to make an appropriate finding for the imposition of a consecutive sentence for the kidnapping charge, and that the record does not support a finding that a consecutive sentence was appropriate under the circumstances. "Although a general presumption exists for the imposition of concurrent sentences, R.C. 2929.41(A) expressly recognizes certain exceptions, including when the record requires the imposition of consecutive sentences under R.C. 2929.14(C) for multiple offenses." *State v. Rice*, 8th Dist. Cuyahoga No. 102443, 2015-Ohio-3885, ¶ 9.

{¶ 33} R.C. 2929.14(C)(4) provides as follows:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 34} During the sentencing hearing, the trial court stated,

[t]he Court must make a finding to support the imposition of consecutive sentences. The Court finds that it is necessary to punish Mr. Mondie or protect the public from future crime and that his sentence that is consecutive is not disproportionate to the seriousness of the conduct and the danger posed by you, and that two or more of the offenses are part of one or more courses of conduct and that the harm caused is so great and unusual that a single prison term would not adequately reflect the seriousness of the conduct.

(Tr. 722.)

{¶ 35} The trial court also incorporated its findings in the journal entry. After review of the record, we find that the trial court made all of the required findings under R.C. 2929.14(C) to justify the imposition of consecutive sentences. The trial court has no obligation to state reasons to support its findings. Nor is it required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37. We find that the trial court did not violate the presumption of concurrent sentencing when it sentenced Mondie.

{¶ 36} Mondie claims that there was nothing in the record to support a finding that the kidnapping of a drug dealer was so great or unusual from another identical offense, or how the offenses were a course of conduct to justify the imposition of consecutive terms. The trial court stated,

The Court must and has also considered the seriousness and recidivism factors relevant to the offense and the offender. Mr. Mondie, you and I both sat through this trial. The evidence presented made it very clear to the Court that you were the one orchestrating everything that went down here.

You didn't pull the trigger — that's not what the evidence presented — but Mr. Braxton was kidnapped and shot dead in the street at your request. That's what the evidence presented. That's why those firearm specifications are there. That's why the jury found you guilty with the firearm specifications. That's why you were found guilty with having weapons while under disability.

The Court must and has ensured that the sentence being imposed does not demean the seriousness of the crime and the impact that it has on the victims. And I say victims because while Mr. Braxton was the only one that was shot dead, there's a courtroom full of victims here today.

They're suffering the loss over and over and over again by being here in court throughout the entire trial and by listening, by seeing pictures of their brother and of their son in a morgue at the Medical Examiner's office and what his sacred body had to go through. They sat through all that. They watched all of that. And there were times where they couldn't watch it anymore and had to get up and leave the courtroom. Hopefully today will be a new chapter in their life.

(Tr. 719-720.)

{¶ 37} Braxton's kidnapping and murder were a part of one or more courses of conduct. Mondie lured Braxton to the gas station with the intent of assisting in Braxton's kidnapping, robbery, and murder. As soon as Braxton entered the car, Mondie sped away, and less than 10 minutes after the initial phone call between Braxton and Mondie, Braxton was shot and left dying in the street. After Braxton was shot, Mondie drove away.

{¶ 38} We find that the trial court did not err in sentencing Mondie to consecutive sentences. Therefore, Mondie's third assignment of error is overruled.

**{¶ 39}** Judgment is affirmed.

It is ordered that the appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

EILEEN T. GALLAGHER, P.J., and
EILEEN A. GALLAGHER, J., CONCUR